IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID MUNOZ, : | |
|     Plaintiff, : | CIVIL ACTION |
| : | |
| v. : | |
| : | |
| WORLD FLAVORS, INC. and : | |
| ON SITE PERSONNEL LLC, : | No. 17-2350 |
|     Defendants. : | |

**MEMORANDUM**

**Schiller, J.**                                                                                                            July 30, 2019

      Defendant On Site Personnel, LLC, a temporary employment agency, hired David Munoz and assigned him to work as a temporary employee at Defendant World Flavors, Inc. Munoz's tenure with both companies was brief. After just twelve days at World Flavors, he was fired. On Site Personnel did not reassign him to any other job sites. Munoz claims that, during his short stint at each of the companies, he was subjected to sex discrimination, a hostile work environment, and retaliation under Title VII and the Pennsylvania Human Relations Act ("PHRA"). Both On Site Personnel and World Flavors (collectively, "Defendants") have moved for summary judgment. Because Munoz has failed to establish a prima facie case of sex discrimination or proffer sufficient evidence from which a reasonable jury could rule in his favor on his other two claims, the Court will grant both motions.

**I.    BACKGROUND**

      Munoz was hired by On Site Personnel on October 27, 2015; one week later, On Site Personnel assigned him to work as a temporary employee at World Flavors. (Def. World Flavors' Statement of Undisputed Material Facts [World Flavors' SUF] ¶¶ 1-3.) On his twelfth—and final—day at World Flavors, November 20, 2015, Munoz had a verbal fight with a coworker. (*Id.*,

1

Ex. B, Dep. of David Munoz ["Munoz Dep."], at 78-79.) According to Munoz, the coworker wanted to use a table that Munoz was using to package heavy bags, but Munoz believed that it would be unsafe to continue packaging without the table. (*Id.* at 44-46.) Because of the disagreement over the table, Munoz complained to his supervisor Anthony Ross; Ross, in turn, instructed Munoz to use a different table and packaging machine. (*Id.* at 46.) Later that morning, both parties agree that World Flavors had dismissed Munoz. (World Flavors' SUF ¶ 19.) Rather than reassign Munoz to another work site, On Site Personnel also fired him. (Munoz Dep. at 18.)

According to Defendants, Munoz was fired that morning because of his altercation and refusal to follow Ross's instructions. Ross's supervisor, Russell Perry, testified that Ross reported Munoz's conduct to him. (World Flavors' SUF, Ex. H, Dep. of Russell Perry ["Perry Dep."], at 20-21.) After speaking with Ross about the incident, Perry dismissed Munoz and two other temporary World Flavors employees involved in the argument. (World Flavors' SUF ¶¶ 17, 19.) Munoz and the other two men left the World Flavors building by approximately 10:30 a.m. (*Id.* ¶ 19.) Perry documented the circumstances of the firing in a contemporaneous memo. (*Id.*, Ex. J, Russell Perry Memo dated Nov. 20, 2015.) On Site Personnel's time sheets for November 20, similarly show that Munoz and the two other temporary employees worked only until 10:30 a.m. on that date. (*Id.*, Ex. C, On Site Personnel Timesheets.)

Despite admitting that he was fired in the morning after he got into an argument with his coworker, Munoz contends that he was fired because he reported sexual advances to World Flavors' Human Resources Department during the afternoon of November 20. (Pl.'s Resp. to World Flavors' SUF ¶ 18.) Munoz testified that, throughout his tenure at World Flavors, Perry sexually harassed him. Specifically, Munoz testified that Perry brushed his shoulder and hand; asked him about his tattoos; looked at him "[l]ike a guy looks at a girl when they want to do

something with them;" tried to flirt with him; and stated that he was a "good specimen of what a sexy man should look like." (Pl.'s Statement of Undisputed Material Facts ["Pl.'s SUF"] ¶¶ 1-2, 5, 8-9.) On the afternoon of November 20, Munoz contends that he reported this behavior to World Flavors by calling a phone number for the Human Resources Department that was listed on the wall of the cafeteria. (Munoz Dep. at 26, 42, 46.) Although there is no record of this phone call or Munoz's complaint, Munoz testified that the person he spoke with indicated that they documented the report and would let the owner of World Flavors and the staff at On Site Personnel know about the incident. (*Id.* at 42.) Approximately one hour after making this report regarding Perry's conduct, Munoz contends that Perry called him into his office and dismissed Munoz from World Flavors. (*Id.* at 42.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the admissible evidence fails to demonstrate a genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). When the movant does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thereafter, the nonmoving party demonstrates a genuine issue of material fact if it provides evidence sufficient to allow a reasonable finder of fact to find in its favor at trial. *Anderson*, 477 U.S. at 248.

In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *See Reves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

## III. DISCUSSION

Munoz sued Defendants for sex discrimination, retaliation, and a hostile work environment under Title VII and the PHRA.[1] Defendants have moved for summary judgment on all counts. Because Munoz has failed to proffer sufficient evidence from which a reasonable jury could rule in his favor on any of his claims, the Court grants Defendants' motions.

### A. Sex Discrimination

Title VII prohibits employment discrimination based on sex. 42 U.S.C. § 2000e-2. Sex discrimination claims under Title VII are subject to the familiar burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Atkinson*, 460 F.3d at 454. The *McDonnell Douglas* analysis includes three steps. First, the plaintiff must establish a prima facie case. *McDonnell Douglas*, 411 U.S. at 802. Once this is established, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *Id.* At the third step, the plaintiff must have "a fair opportunity to show that [the defendant's] stated reason for [the plaintiff's] rejection was in fact pretext." *Id.* at 804. Although the burden of production shifts at each stage of the analysis, "[t]he ultimate burden of

---

[1] Because "[c]laims under the PHRA are interpreted coextensively with Title VII claims," the Court will not differentiate between the same claims brought under each statute. *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 454 n.6 (3d Cir. 2006).

4

persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).

To establish a prima facie case of sex discrimination, a plaintiff must establish that: (1) he is a member of a protected class; (2) he was qualified for the position in question; (3) he suffered an adverse employment action; and (4) that adverse employment action gives rise to an inference of unlawful discrimination. *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410-11 (3d Cir. 1999). Here, Defendants contest only the fourth element of the prima facie case, arguing that, aside from Munoz's own subjective belief that he was discriminated against on the basis of his sex, there is no evidence in the record that he was treated differently than nonmembers of his protected class. (World Flavors' Mem. of Law in Supp. of Mot. for Summ. J. ["World Flavors' Br."] at 6.) In response, Munoz simply points out that Defendants have conceded that he meets all but the last prong of the prima facie case, that "[t]he only genuine issue of material fact is whether nonmembers of the protected class were treated more favorably under the circumstances giving rise to an inference of discrimination," and that the analysis of this prong is "aided by the case law describing same-sex sexual harassment." (Pl.'s Mem. of Law in Opp'n to Defs.' Mots. for Summ. J. ["Pl.'s Br."] at 4.)

This does not satisfy Munoz's burden for establishing the final element of his prima facie case. Munoz has not articulated what specific facts are in dispute or what evidence could lead a reasonable factfinder to believe that his firing was a result of sex discrimination. Based on Munoz's Statement of Undisputed Facts and his brief in opposition to summary judgment, he appears to assert that he was fired for reporting sexual harassment. But this is appropriately addressed in the

context of his retaliation claim. Because he has failed to satisfy the prima facie case, summary judgment is granted on Munoz's sex discrimination claim under both Title VII and the PHRA.

**B. Retaliation**

Retaliation claims, like discrimination claims, under Title VII are subject to the *McDonnell Douglas* framework described above. *Moore v. City of Phila.*, 461 F.3d 331, 342 (3d Cir. 2006). To establish a *prima facie* case of retaliation, a plaintiff must show that: "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Id.* at 340-41. Once a plaintiff has established her prima facie case and the employer has articulated a legitimate, nondiscriminatory reason for its adverse action, the plaintiff must show that the employer's explanation is pretextual. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). To succeed at this stage, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* at 764. To cast enough doubt onto the employer's proffered reasons, a plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence." *Id.* at 765.

Here, Defendants concede that Munoz can establish a *prima facie* case of retaliation, but assert that Munoz has failed to show that Defendants' reason for firing him—that Munoz fought with another employee and then refused to follow his supervisor's instructions—was pretextual. (World Flavors' Br. at 24.) In response, Munoz claims that the following pieces of evidence

demonstrate pretext: (1) he was fired within one hour of making his report to Human Resources about Mr. Perry's sexual harassment; (2) staff at On Site Personnel told Munoz that he was fired for "whistleblowing;" (3) On Site refused to reassign him to any additional jobs; and (4) Munoz had a valid reason for questioning his supervisor's instructions to him. (Pl.'s Br. at 11-12.)

Munoz has failed to proffer sufficient evidence from which a reasonable factfinder could conclude that he was fired because of his protected activity. In Munoz's brief, he asserts that "[t]here is no dispute that Mr. Perry terminated [him] in less than an hour on the same day after [he] reported Mr. Perry's sexually harassing conduct to Human Resources and On Site." (Pl.'s Br. at 11.) But there is no basis for this statement. In his response to World Flavors' Statement of Undisputed Material Facts, Munoz did not dispute that he was fired by Mr. Perry at World Flavors at 10:30 a.m. (Def. World Flavors' SUF ¶ 19.) Two other pieces of evidence confirm this timing: World Flavors' timesheet for that date and Mr. Perry's internal note regarding the firing. (*Id.*, Exs. C, J.) On the other hand, Munoz testified that he called World Flavors' Human Resources Department in the afternoon, well after 10:30 a.m. (Munoz Dep. at 26.) In other words, he concedes that World Flavors fired him before he purportedly engaged in any activity protected under Title VII. This is dispositive of Munoz's retaliation claim; the Court grants Defendants' motion as to the Title VII and PHRA retaliation claims.

### C. Hostile Work Environment

To establish a hostile work environment claim under Title VII and the PHRA, a plaintiff must establish "(1) the employee suffered intentional discrimination because of his/her sex; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person in like circumstances; and (5) the existence of *respondeat superior* liability." *Mandel v. M & Q Packaging Corp.*, 706 F.3d

157, 167 (3d Cir. 2013). Defendants argue that Munoz has failed to satisfy the first four prongs. Because the Court finds that, even viewing the record in the light most favorable to Munoz, he cannot prove that the alleged conduct was severe or pervasive, it will limit its analysis to that dispositive element.

Although there is no specific formula for assessing the second element of a hostile work environment claim, a plaintiff must show that the intentional sex discrimination in his or her workplace was "sufficiently severe or pervasive [as] to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). In assessing this element, courts must look "at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998). Repeatedly, the Supreme Court has noted that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* at 788. Indeed, "conduct must be extreme to amount to a change in the terms and conditions of employment." *Id.* This high standard is intended to ensure that Title VII does not transform into a "general civility code," *Oncale*, 523 U.S. at 80, and that "complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing" are insufficient, *Faragher*, 524 U.S. at 788.

While Munoz testified that Perry made inappropriate sexual comments to him, brushed his hand and shoulder, and looked at him in a sexual way, the Court finds that, under the totality of the circumstances, the alleged conduct does not constitute "severe or pervasive" discrimination that changed the terms and conditions of Munoz's employment. The alleged conduct is more akin

8

to "offensive utterances" rather than physically threatening or otherwise severe conduct. *See Faragher*, 524 U.S. at 787-88. Simply put, Munoz's testimony, taken as true, does not amount to "extreme" behavior that rendered World Flavors a hostile work environment. *See Shramban v. Aetna*, 115 F. App'x 578, 579 (3d Cir. 2004) (affirming summary judgment for defendant employer because a supervisor's inappropriate sexual comments, comments about her personal life and appearance, and inappropriate touching of her hand were not severe or pervasive). Because no reasonable factfinder could conclude from the evidence presented by Munoz that the alleged conduct was severe or pervasive, summary judgment is granted to Defendants on Munoz's hostile work environment claims under Title VII and the PHRA.

## IV. CONCLUSION

For the reasons discussed above, Defendants' motions for summary judgment are granted. An Order consistent with this Memorandum will be docketed separately.